No. 08-4227

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER DIRECTING A PROVIDER OF ELECTRONIC COMMUNICATION SERVICE TO DISCLOSE RECORDS TO THE GOVERNMENT**

Appeal from Memorandum Order
Entered by the United States District Court
for the Western District of Pennsylvania (McVerry, J.)
at Magistrate No. 07-524M

**PETITION FOR REHEARING EN BANC**

DAVID J. HICKTON
United States Attorney

Robert L. Eberhardt
Assistant U.S. Attorney

LANNY A. BREUER
Assistant Attorney General

Mark Eckenwiler
Associate Director
Office of Enforcement Operations
Criminal Division
United States Department of Justice

700 Grant Street, Suite 4000
Pittsburgh, Pennsylvania 15219

Tel:  (412) 894-7353
Fax:  (412) 644-5870

E-Mail:    Robert.Eberhardt@usdoj.gov

## STATEMENT OF THE CASE

The government respectfully seeks rehearing *en banc*, pursuant to Federal Rule of Appellate Procedure 35(b), of the precedential opinion issued in this appeal on September 7, 2010 (attached hereto as Exhibit A). Counsel for the government believes, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance – whether an order under 18 U.S.C. § 2703(d) must issue when the government makes a factual showing meeting the standard set forth in that provision – and that the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this court, i.e., the panel's decision is contrary to *United States v. Christie*, __ F.3d __, No. 09-2908 (3d Cir. July 16, 2010).

## SUMMARY OF ARGUMENT

On September 7, 2010, a panel of this Court held that historical cell-site location information retained by a wireless carrier as a routine business record

> is obtainable under a § 2703(d) order and that such an order does not require the traditional probable cause determination. Instead, the standard is governed by the text of [18 U.S.C.] § 2703(d), i.e., "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."

*In re Application*, slip op. 17. In the same opinion, however, the panel majority held that "the statute as presently written gives the [magistrate judge] the option to require a warrant showing probable cause...." Slip op. 28.

As noted by Judge Tashima in his concurrence, this contradictory holding, "[g]ranting a court unlimited discretion to deny an application for a court order, even after the government has met statutory requirements, is contrary to the spirit

1

of the statute." Slip op. 30. More importantly, "the majority's interpretation of the statute, because it provides *no* standards for the approval or disapproval of an application for an order under § 2703(d) ... vests magistrate judges with arbitrary and uncabined discretion to grant or deny issuance of § 2703(d) orders at the whim of the magistrate, even when the conditions of the statute are met." *Id.* (emphasis in original; footnote omitted).

Apart from the trial court below, no other court has even suggested, let alone held as the panel did here, that a magistrate judge may deny an application for a 2703(d) order even when the government has met the standard set forth in the statute. The panel majority's novel interpretation of section 2703(d) threatens to upset established judicial practice not only within the Third Circuit, but elsewhere within the federal courts. Prosecutors across the country use the statute in criminal investigations to obtain a wide range of evidence extending well beyond cell-site location information. For that reason alone, the panel's fundamentally flawed but potentially influential decision squarely presents a question of exceptional importance.

In addition, the panel made an unfounded and erroneous assumption when it stated that "[a] cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." Slip op. 25. As Judge Tashima points out in concurrence, this assumption lacks any basis in the record before the court, and conflicts with the finding of the D.C. Circuit that "a mobile phone 'sends signals to the nearest cell site at the start and end of a call. These signals ... are necessary to achieve communications between the caller and the party he or she is calling ....'" *U.S. Telecom Ass'n v. FCC*, 227 F.3d 450, 463 (D.C. Cir. 2000) (quoting the FCC's brief in that proceeding). More importantly, the panel majority's holding conflicts sharply with this Court's recent decision in *United*

*States v. Christie*, __ F.3d __, No. 09-2908 (3d Cir. July 16, 2010).[1] That case stands for a clear proposition: that non-content networking information (there, an IP address) relayed from a customer to a service provider as an essential step in enabling the routing of communications is "voluntarily conveyed" by the subscriber, and thus enjoys no reasonable expectation of privacy. *Id.*, slip op. 29.

Thus, rehearing *en banc* is "necessary to secure and maintain uniformity" of this Court's decisions, Fed. R. App. P. 35(b)(1)(A), and because the panel's decision presents an issue of "exceptional importance." Fed. R. App. P. 35(b)(1)(B).

## ARGUMENT

Pursuant to 18 U.S.C. § 2703(c)(1), the United States may require a provider of electronic communication service to disclose "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" when it obtains a court order for such disclosure under 18 U.S.C. § 2703(d) (hereinafter, a "2703(d) order").  A 2703(d) order "shall issue" when the government provides "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).

On November 21, 2007, the United States submitted an application to a Magistrate Judge in the Western District of Pennsylvania seeking a 2703(d) order directing a wireless telephone provider to disclose routine business records reflecting historical connection and cell-site information[2] associated with a specified

---

[1] On October 15, 2010, this Court designated the opinion in *Christie* as a "precedential" opinion, *i.e.*, one having institutional value. *See* 3d Cir. I.O.P. 5.2 (2010).

[2] Historical cell site information includes only the service provider's record of prior usage of a cell phone and does not include any information concerning

3

cell phone. The Application stated that the requested cell phone records are relevant and material to an ongoing investigation into large-scale narcotics trafficking and various related violent crimes.

On February 19, 2008, without requesting briefing on the underlying legal and factual issues, the Magistrate Judge denied the Application, ruling in a written opinion that the United States is barred as a matter of law from obtaining historical cell-site information pursuant to a 2703(d) order, and holding in the alternative that the statute grants a magistrate judge discretion to demand the higher showing of probable cause. The trial court affirmed in a summary opinion, and the government timely appealed.

In a September 7, 2010 opinion by Judge Sloviter, a panel of this Court found that the lower court had committed numerous errors. Initially, the panel held correctly that cell-site location information routinely retained by wireless service providers as a business record

> is obtainable under a § 2703(d) order and that such an order does not require the traditional probable cause determination. Instead, the standard is governed by the text of § 2703(d), i.e., "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. 18 U.S.C. § 2703(d). The [magistrate judge] erred in allowing her impressions of the general expectation of privacy of citizens to transform that standard into anything else. We also conclude that this standard is a lesser one than probable cause, a conclusion that, as discussed below, is supported by the legislative history.

Slip op. 17.

Had the panel stopped here, it would properly have reversed the lower court and directed issuance of the requested section 2703(d) order. Instead, however, the panel majority proceeded (in Part IV of the opinion) to make additional, and

---

the content of any communications.

4

critically incorrect, legal findings inconsistent with the holding quoted above. Thus, although the panel vacated the lower court's decision, it ended by endorsing the district court's essential conclusion. We address each fundamental error in turn below.

**1.     18 U.S.C. § 2703(d) Does Not Vest Discretion in the Magistrate Judge to Demand Probable Cause**

The panel majority wrongly held that "the statute as presently written gives the [magistrate judge] the option to require a warrant showing probable cause," slip op. 28, pinning its conclusion on the phrase "only if" in the statute. However, the panel's unprecedented holding that this phrase establishes a necessary, but not sufficient, condition for issuance of an order simply cannot be reconciled with the text, structure, and history of section 2703.

First, the court's interpretation would effectively eliminate the words "and shall issue" from section 2703(d), reading the statute as if it were written "[A 2703(d) order] may be issued by any court that is a court of competent jurisdiction only if the government entity offers specific and articulable facts . . . ." So long as the government has offered specific and articulable facts, the court's reading goes, the Magistrate may issue a 2703(d) order at its discretion. In so doing, however, the court has effectively eliminated the phrase "and shall issue" – the nondiscretionary language of command – from the provision.

In addition, as discussed in detail in the government's earlier briefs, section 2703(d) may not be read in a vacuum; rather, any interpretation of the statute must take account of ECPA's comprehensive framework, especially of parallel provisions within section 2703 itself. From the time of ECPA's enactment in 1986, Congress clearly laid out three separate and distinct mechanisms in 18 U.S.C. § 2703 by which the Government could compel a service provider to turn over a customer's

stored non-content records: a subpoena, a warrant based on probable cause, or a court order under 2703(d). *See* 18 U.S.C. § 2703(c)(1)(A) (warrant), (c)(1)(B) (2703(d) order), & (c)(1)(E) & (c)(2) (subpoena); *see also* H. Rep. No. 647, 99th Cong, 2d Sess. 69 (1986). This basic structure – distinguishing clearly between 2703(d) orders and warrants based on probable cause – has remained intact to the present day.

Yet under the reading adopted by the panel majority, a magistrate judge may, for any reason or no reason at all, arbitrarily deny an application under 2703(d) and instead insist upon a warrant. Such a reading undercuts one explicit purpose of the framework crafted by Congress – here, to allow the Government to obtain non-content customer records without having to show probable cause – and renders a portion of the statute superfluous. This contravenes the longstanding canon that a court should, whenever possible, give effect to every provision of a statute. For similar reasons, in *Tavarez v. Klingensmith*, 372 F.3d 188, 191 (3d Cir. 2004), this Court emphasized the necessity of "examin[ing a] statutory scheme ... as a whole" where failure to do so would frustrate the broader purposes of the larger statutory framework.

Indeed, the panel's logic proves too much. If the phrase "only if" in section 2703(d) gives a magistrate judge *carte blanche* to demand more than "specific and articulable facts," he or she need not stop at probable cause. Under the reading adopted by the panel majority, which lacks any limiting principle, a magistrate judge could arbitrarily demand proof by a preponderance of the evidence, clear and convincing evidence, or even beyond a reasonable doubt, given that § 2703(c) requires disclosure of customer non-content records "only when" the government

uses a warrant.[3] Such an interpretation does not give effect to every provision of the statute, as required. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001). On the contrary, it substitutes a magistrate judge's personal predilections for the intricate framework duly enacted by Congress. Because the majority opinion jettisons this carefully crafted structure in favor of granting lower court judges essentially uncabined discretion to impose whatever levels of proof suit their individual notions of sound policy, it cannot be a correct reading of the law.

It is crucial to understand the breadth of the panel's decision, which does not merely hold that a magistrate judge may deny a 2703(d) application where the requested order would infringe a clear constitutional right. Instead, the panel's holding, stripped to its essentials, is that a magistrate judge may, *in the absence of a constitutional violation*, decide on a whim to reject a 2703(d) application even when it satisfies the statutory standard of "specific and articulable facts."

The majority opinion attempts without success to rebut these criticisms. Accepting an argument put forward by *amici curiae*, the panel tries to justify its holding by asserting that "if magistrate judges were required to provide orders under § 2703(d), then the Government would never be required to make the higher showing required to obtain a warrant under § 2703(c)(1)(A)." Slip op. 23. This statement is true, but is also a *non sequitur* for the simple reason that section

---

[3] The implications of the court's decision are thus doubly sweeping. Not only are magistrate judges empowered to insist upon probable cause in *any* section 2703(d) application – regardless of whether it seeks CSLI or other non-content records – but the same logic applied to "only when" in section 2703(c) would give a court authority to demand an arbitrarily high showing of proof even beyond probable cause. ECPA's finely calibrated system of graduated compulsory process would be made a nullity.

2703(c)(1)(A) *is never mandatory*; rather, Congress included the option to use a warrant for non-content records as a convenience.[4]

Thus, the supposed "inherent contradiction in the statute[,] or at least an underlying omission" and "failure of Congress to make its intention clear" (slip op. 28) is purely a product of the panel majority overlooking the respective functions of parallel provisions within section 2703. Indeed, the panel's statement that "[n]othing in the legislative history suggests that this was a result Congress contemplated" (slip op. 24) – *i.e.*, the ability of the government to obtain a 2703(d) order on an intermediate showing – more accurately describes the result reached by the panel. If Congress truly intended to allow magistrates to decide how demanding

---

[4] As the government explained to the panel in a Rule 28(j) letter submitted after oral argument, according to Professor Orin Kerr, a leading academic commentator on the statute,

> [o]ne interesting aspect of § 2703 is that it generally allows the government to obtain greater process when lesser process will do. If a provision of § 2703 allows government agents to compel information with a subpoena, it also allows them to obtain that information with a 2703(d) order; if it allows agents to obtain information with a 2703(d) order, then a search warrant is also acceptable. Why might the government want this option? The main reason is efficiency. Investigators may decide that they need to compel several types of information, some of which can be obtained with lesser process and some of which requires greater process.
>
> The "greater includes the lesser" rule in § 2703 allows the government to obtain only one court order—whatever process is greatest—and compel all of the information in one order all at once.

Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1220 (2004) (footnote omitted); *see also* J. Carr & P. Bellia, *The Law of Electronic Surveillance* § 4:77 (2009) ("One feature of ECPA is that through use of greater legal process officials can gain access to any information that they could obtain with lesser process."). Notwithstanding these authorities, the majority holds that the government's (and the most natural) reading of the statute "trivializes" section 2703(c)(1)(A). *See* slip op. 23.

a standard to apply to a law enforcement request for records under section 2703(d), it presumably would have provided some guidance on how that decision should be made. The fact that the statute is completely silent on this question is good evidence that the discretion perceived by the panel does not exist.

Even if the meaning of the statute were not clear from its text and structure, an examination of the legislative history confirms Congress's intent that a 2703(d) court order be granted on less than probable cause. As originally enacted in 1986, § 2703(d) required only a showing that "there is reason to believe ... the records or other information sought, are relevant to a legitimate law enforcement inquiry." Pub. L. No. 99-508, § 201 (1986). Eight years later, Congress affirmatively chose to raise the test to the current "specific and articulable facts" standard. *See* Pub. L. No. 103-414, § 207(a) (1994). As the accompanying House Judiciary Committee report makes clear, this is "an intermediate standard ... higher than a subpoena, *but not a probable cause warrant.*" H. Rep. No. 827, 103d Cong., 2d Sess. 31 (1994) (emphasis added), *reprinted in* 1994 U.S. Code Cong. & Admin. News 3489, 3511.[5]

The panel majority attempts to bolster its conclusion by declaring, in effect, that the government typically has probable cause anyway, so it might as well apply for a warrant. *See* slip op. 24 n.8. Of course, this suggestion is entirely beside the point, failing as it does to acknowledge that Congress has in fact expressly created an alternative statutory mechanism (a section 2703(d) order) specifically for use by law enforcement.

For all of these reasons, the panel majority erred when it concluded that magistrate judges have discretion to deny the government's applications for 2703(d)

---

[5] Notably, the phrase on which the panel majority bases its decision – "only if" – has been present in section 2703(d) since its 1986 creation.

orders even when those applications satisfy the "specific and articulable facts" standard. The severity of this error warrants rehearing *en banc*.

### 2. Instead of Providing Meaningful Guidance to Prosecutors and Other Courts, the Panel's Unprecedented Reading of the Statute Sows Grave Uncertainty

One conspicuous deficiency in the panel's decision is that it fails to offer any meaningful guidance on the scope of the discretion thus granted to magistrate judges who entertain section 2703(d) applications. The majority unhelpfully declares that the option to demand probable cause should be used "sparingly," a nominal limitation the court imposes without reference to the language of the statute, its structure, or its legislative history.

Equally problematic is the court's directive in this specific case that

> should the MJ [magistrate judge] conclude that a warrant is required rather than a § 2703(d) order, on remand it is imperative that the MJ make fact findings and give a full explanation that balances the Government's need (not merely desire) for the information with the privacy interests of cell phone users.

Slip op. 28-29. First, it is unclear what the court means by "required," given that the majority holds clearly that a magistrate's demand for probable cause is purely a matter of discretion. In addition, the court provides absolutely no direction on how a lower court should "balance" the competing interests identified.

Unfortunately, it does not appear possible that the court is saying – albeit indirectly – that the requirement in question and the consequent weighing of factors are triggered only by Fourth Amendment concerns about the nature of the information sought. (That is the position staked out in the separate concurrence by Judge Tashima, who contends that absent constitutional infirmities in an application, a lower court has no discretion to deny an application satisfying the section 2703(d) standard.) Rather, the majority's holding can only be understood

as a *statutory* interpretation, albeit one in which the court has simply invented a new regime with no clear contours to guide decisionmaking below.

Judge Tashima's clear and concise concurring opinion lays bare these defects, noting that "the majority's interpretation of the statute ... provides *no* standards for the approval or disapproval of an application [and] vests magistrate judges with arbitrary and uncabined discretion to grant or deny issuance of § 2703(d) orders at the whim of the magistrate, even when the conditions of the statute are met." Slip op. 30-31 (emphasis in original; footnote omitted). And as Judge Tashima further observes, "[g]ranting a court unlimited discretion to deny an application for a court order, even after the government has met statutory requirements, is contrary to the spirit of the statute." Slip op. 30.

As the first court of appeals decision to consider whether the statute grants magistrate judges such discretion, the panel majority's novel and unsupported ruling – in particular, its lack of guidance for courts faced with applications for section 2703(d) orders – holds the potential to sow widespread confusion and uncertainty. In many cases, prosecutors both within and outside the Third Circuit will inevitably be forced to make factual showings in excess of that clearly prescribed by Congress, or will have their applications turned aside for no legitimate statutory or constitutional reason. Rehearing *en banc* is warranted in order to avoid such burdens on the lawful conduct of criminal investigations nationwide.

**3. The Panel Majority's Decision Conflicts with Recent Precedent in This and Other Circuits on a Key Fourth Amendment Question**

The majority's handling of the Fourth Amendment question squarely presented in this case is also incorrect. It is true that the magistrate judge failed to conduct proper factfinding in support of her decision; indeed, as the government's opening brief explained in detail, the decision below contained numerous

11

unsupported and factually incorrect statements. However, the information made available to the panel was more than sufficient to allow the court to resolve the constitutional issue laid before it: whether the issuance of a 2703(d) order for historical cell-site location information is barred by the Fourth Amendment to the Constitution.

First, the government's briefs cited to detailed factfinding in another judicial opinion concerning such information, *In re Application*, 405 F. Supp. 2d 435 (S.D.N.Y. 2005), where the court personally examined a map of cellular tower placement in Manhattan, one of the country's most densely populated urban centers. *See* Gov't Mem. 31-32. In addition, the government cited to six different FCC reports detailing the relative imprecision of cell-site location information. *See* Gov't Mem. 33-34 & n.18; Gov't Reply Mem. 5-6 & n.3. As urged by the government, these sources are all indisputably fitting material for judicial notice.

Notwithstanding the unrebutted fact that wireless carriers record and retain historical cell-site location information in the normal course of business,[6] the panel majority asserted – disregarding *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976) – that "[a] cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." Slip op. 25. Judge Tashima notes in concurrence the absence of any basis for this conclusion, slip op. 31 n.11, although it is unclear why additional factual development is required. As Judge Tashima himself observes, the FCC itself has pointed out that "a mobile phone 'sends signals to the nearest cell site at the start and end of a call. These signals ... are necessary to achieve communications between the caller and the party he or she is calling ....'" *U.S. Telecom Ass'n v.*

---

[6] If this were not true, there would be no records for the government to seek access to after the fact.

*FCC*, 227 F.3d 450, 463 (D.C. Cir. 2000) (quoting the FCC's brief in that proceeding).

In *Smith*, the Supreme Court held both that telephone users have no subjective expectation of privacy in dialed telephone numbers and also that any such expectation is not one that society is prepared to recognize as reasonable. *See* 442 U.S. at 742-44. The Court's reasoning applies equally to cell-site information. The Court stated: "we doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed." *Id.* at 742. Similarly, cell phone users understand that they must convey a signal to a cell phone tower before their call may be completed.

Although the panel in this case sought to justify its contrary conclusion by asserting that "it is unlikely that cell phone customers are aware that their cell phone providers *collect* and store historical location information," slip op. 25 (emphasis in original), that is no basis for distinction. In response to this same argument from Smith himself, the Supreme Court declared that

> [t]his argument does not withstand scrutiny. The fortuity of whether or not the phone company in fact elects to make a quasi-permanent record of a particular number dialed does not in our view, make any constitutional difference. Regardless of the phone company's election, petitioner voluntarily conveyed to it information that it had facilities for recording and that it was free to record.

442 U.S. at 745.

The panel majority's holding also conflicts sharply with this Court's recent precedential decision in *United States v. Christie*, __ F.3d __, No. 09-2908 (3d Cir. July 16, 2010). That case stands for a clear proposition: that non-content networking information (there, an IP address assignment) relayed from a customer to a service

13

provider as an essential step in enabling the routing of communications is "voluntarily conveyed" by the subscriber. *Id.*, slip op. 29. It is equally likely that many Internet users are unaware that their service providers collect and retain information showing which IP addresses have been assigned to different users at different times, yet every federal appellate court to consider the question – including this Court – has squarely held that such information falls within the well-established third-party doctrine, and that it therefore enjoys no Fourth Amendment protection. *See Christie,* slip op. 29-30 (collecting cases); *see also* Gov't Reply Mem. at 4 n.2 (citing the trial court's opinion in *Christie*).

### 4. The Panel Materially Misstates the Record Below

The panel stated that the Magistrate Judge failed to make an initial determination whether the government's application satisfied even the intermediate standard of section 2703(d). To the contrary, the Magistrate Judge expressly found that "[t]he Government may reasonably expect that information as to the Criminal Suspect's historic whereabouts will provide valuable evidence of the locations of that person's sources of [narcotics] supply, 'stash sites,' and distribution networks." 534 F. Supp. 2d at 588 n.12.

Such a "reasonable expect[ation]" satisfies the section 2703(d) standard, as the "specific and articulable facts" test is drawn directly from the Supreme Court's landmark opinion in *Terry v. Ohio*, 392 U.S. 1, 21 (1968): "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The Supreme Court has on numerous occasions characterized the *Terry* standard more concisely as "reasonable suspicion." *See*, *e.g.*, *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009) ("reasonably suspects"); *Hudson v. Michigan*, 547 U.S. 586, 623 (2006) ("reasonable suspicion").

Thus, there is no need for a remand to make such a determination. It is already law of the case. And because no other statutory, constitutional, or procedural bar remains, the panel should instead have reversed outright and directed the entry of the requested order.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the matter be reheard by the Court sitting *en banc*.

Respectfully submitted,

| | |
|---|---|
| LANNY A. BREUER<br>Assistant Attorney General | DAVID J. HICKTON<br>United States Attorney |
| | /s/Robert L. Eberhardt |
| Mark Eckenwiler<br>Associate Director<br>Office of Enforcement Operations<br>Criminal Division<br>United States Department of Justice | Robert L. Eberhardt<br>Assistant United States Attorney |

## **CERTIFICATE OF SERVICE**

I hereby certify that the following are filing users and will be served electronically by the Notice of Docketing Activity:

>Witold J. Walczak, Esq.
>Email: vwalczak@aclupa.org
>American Civil Liberties Union
>313 Atwood Street
>Pittsburgh, PA 15213-0000
>
>Kevin S. Bankston
>Email: bankston@eff.org
>Electronic Frontier Foundation
>454 Shotwell Street
>San Francisco, CA 94110
>
>Lisa B. Freeland, Esq.
>Email: Lisa_Freeland@fd.org
>Federal Public Defender
>1450 Liberty Center
>1001 Liberty Avenue
>Pittsburgh, PA 15222
>
>Susan Freiwald
>Email: freiwald@usfca.edu
>Professor of Law
>University of San Francisco
>School of Law
>2130 Fulton Street
>San Francisco, CA 94117


   /s/Robert L. Eberhardt
    Robert L. Eberhardt
    Assistant United States Attorney

Dated: October 21, 2010